UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SHAWN RANDALL THOMAS,

        Plaintiff,

        -v-


POLICE OFFICER NICKEY A. VALENTINE;
POLICE OFFICER ELENA MALCHEVSKY;
POLICE OFFICER KRYSTAL DIAZ-OLIVIER;
POLICE OFFICER DANIEL M. GORGA;
POLICE OFFICER DOROTA TRACZ; POLICE
OFFICER HENRY; POLICE OFFICER PEN ZHU;
POLICE OFFICER VICTORIA; POLICE SERGEANT
RICE; POLICE OFFICER DOES NO. 1 THROUGH 3

and

THE CITY OF NEW YORK

        Defendants.
----------------------------------------------------------X

      COMPLAINT

      JURY TRIAL DEMANDED

## NATURE OF ACTION

1.     This action is brought by Plaintiff, Mr. Shawn Thomas, to recover damages for the

Defendants' violations of Plaintiff's civil and constitutional rights in or about October 2015,

after he was arrested for a misdemeanor and a violation.

## THE PARTIES

2.     Plaintiff is domiciled in Bronx County, New York.

3.     Defendants Nickeya Valentine, Police Officer Elena Malchevsky, Police Officer

Krystal Diaz-Olivier, Police Officer Daniel M. Gorga, Police Officer Dorota Tracz, Police

Officer Henry, Police Officer Pen Zhu, Police Officer Victoria, Police Sergeant Rice, and

Does 1 through 3 are employees of the City of New York Police Department, as referred to herein as the "Individual Defendants."

4.    The City of New York is a municipal corporation whose residence is in all five counties of New York City, including New York County.

## JURISDICTION AND VENUE

5.    Jurisdiction is proper in this district under 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, among them 42 U.S.C. § 1983.

6.    Venue is proper in this district under 28 U.S.C. § 1391(c) in that the events at issue occurred in Kings County, New York.

7.     Venue is proper in this district under 28 U.S.C. § 1391(c) in that the City of New York is deemed to reside in this jurisdiction.

## FACTUAL ALLEGATIONS UNDERLYING PLAINTIFF'S CLAIMS

8.    On October 9, 2015, Plaintiff Shawn Thomas was arrested on charges of Theft of Services [failure to pay]  PL 165.13(3) a class A misdemeanor; and Trespass PL 140.05 a violation, by New York City Police Officer Elena Malchevsky in Kings County, New York at the Nevins Street subway station.

9.    Defendants Police Officer Elena Malchevsky, and Police Officer Nickeya Valentine initiated the criminal prosecution of Mr. Thomas with the filing of a criminal complaint.

10.    At trial, on cross examination, the prosecution's sole witness, Defendant Police Officer Elena Malchevsky, the arresting officer, testified that she did not know if Mr. Thomas paid for service

2

11.     Defendant Malchevsky testified she was not in a position to witness Mr. Thomas's payment.

12.     Defendant Malchevsky testified that she arrested Mr. Thomas because he refused to provide her with an identification card and to answer her questions.

13.     Defendant Malchevsky lacked probable cause to believe that Mr. Thomas did not pay.

14.     Mr. Thomas was subsequently acquitted at trial by jury on December 8th, 2016.

15.     At the time of arrest, Defendant Police Officer Daniel M. Gorga pushed Plaintiff backwards several feet, and slammed him violently onto a subway station bench, and then hit him hard in the chest.

16.     Defendant Gorga said to Mr. Thomas,  "When they tell you to fucking do something you do it, you understand."

17.     Mr. Thomas was then handcuffed by Defendants Police Officer Daniel M. Gorga, and Police Officer Henry.

18.     Defendants, Police Officer Elena Malchevsky, Police Officer Krystal Diaz-Olivier, Police Officer Daniel M. Gorga, Police Officer Tracz, and Police Officer Henry all surrounded Mr. Thomas and participated in his unlawful arrest.

19.     As a result of the battery in the subway station, Mr. Thomas was taken to Brooklyn Hospital in Kings County, New York by police, where he was treated for his injuries.

20.     Mr. Thomas was then transported by police to City of New York Transit Police Station TD30 in Brooklyn, New York

21.     Mr. Thomas was well known at that Police Station as an activist for "Police Accountability".

22.     At the time of arrest Mr. Thomas was wearing a "CopWatch" police accountability shirt that was clearly visible, and recognized by police officers as being associated with what they referred to as "anti-cop groups".

23.     At the station, Mr. Thomas refused to agree to be fingerprinted because Plaintiff in good faith believed himself to be under no lawful obligation to provide fingerprints, and believed himself to be the subject of targeted police harassment as a pattern and practice of the New York City Police Department, and police misconduct.

24.     At the time of the arrest, Mr. Thomas was the cause of active Civilian Complaint Review Board ("CCRB") complaints against two police officers at that police station, TD30; and the cause of an active NYPD Internal Affairs Bureau investigation of another police officer at that police station, TD30.

25.     At the time of the arrest there was a video embarassing to the Police Department, published by Mr. Thomas, of misconduct or poor conduct by police officers from Police Station TD30, which gained much attention, and had been seen by hundreds of thousands of people, including police officers from police station TD30.

26.     During his many hours in Defendant's custody, Mr. Thomas was harassed, and taunted by several police officers within the TD30 Police Station, including Police Officer Joseph Schwaner, who was the subject of a substantiated CCRB complaint filed against him by Mr. Thomas.

27.     Defendant Police Officer Elena Malchevsky transported Mr. Thomas to Borough Court Section – KCB on October 9, 2015 at approximately 8:30 p.m., during which Plaintiff, wearing the police accountability shirt, was continually harassed, and taunted by several police officers.

4

28.     At approximately 12:47am on October 10, 2015, Mr. Thomas was taken to Brooklyn Hospital where he was handcuffed to a bed in a confined area under the custody of Defendant Police Officer Elena Malchevsky and Police Officer Alexander Miroshnyk.

29.     At that time Police Officer Alexander Miroshnyk had knowledge that Mr. Thomas had recently opened an Internal Affairs complaint against Miroshnyk.

30.     For over three hours, while at Brooklyn Hospital, Defendant Police Officer Elena Malchevsky and Police Officer Miroshnyk refused to allow Mr. Thomas to use the toilet, and refused Mr. Thomas's request for food and water.

31.     Mr. Thomas was taken back to Borough Court Section – KCB at approximately 4:15 a.m. on October 10, and subsequently transferred to the custody of Defendant Police Officer Krystal Diaz-Olivier.

32.     At approximately 8:00 a.m. on October 10, Mr. Thomas was thirsty, and requested water to drink from Defendants Krystal Diaz-Olivier and Police Sergeant Rice.

33.     Both Defendant Diaz-Olivier and Defendant Rice denied Plaintiff's request for water to drink for a long period of time.

34.     He had also requested food, which request was denied by Defendant Diaz-Olivier and Defendant Rice.

35.     Shortly thereafter, Plaintiff gained the attention of a medical staff member of the FDNY, who became irate with the Police Officers denying water to Mr. Thomas, and demanded that they move him to a cell where he could have access to drinking water.

36.     At the insistence of FDNY, Defendants moved Mr. Thomas to another cell nearby where he could access drinking water.

37.     At that time, Police Sergeant Rice called for an ambulance to take Mr. Thomas to a

5

hospital for a psychiatric evaluation.

38.     Defendants Police Sergeant Rice and Police Officer Krystal Diaz-Olivier knew that there was no basis for ordering such an evaluation, and did so for an improper purpose.

39.     In the alternative, Police Sergeant Rice and Police Officer Krystal Diaz-Olivier were inadequately or improperly trained in the medical decision-making needed to properly determine whether such a psychiatric evaluation was necessary and/or appropriate.

40.     At approximately 9:45 a.m. on October 10, EMTs arrived at the cell where Mr. Thomas was held.

41.     Mr. Thomas explained to EMT Williams that he never requested medical treatment, and that Plaintiff's only complaint was that he was denied food and water by Defendants.

42.     EMT Williams convinced Mr. Thomas to go to the hospital where he would receive food and water.

43.     Mr. Thomas agreed, upon the condition that he be taken out by wheelchair because it was too painful to walk with cuffs on his ankles.

44.     The EMT agreed to that condition.

45.     Mr. Thomas was placed into leg shackles, which were painful, as they placed metal directly on his shins that dug into the flesh and bone.

46.     Mr. Thomas had suffered the pain of having his ankles in cuffs for several hours prior to this incident.

47.     Police Officers then handcuffed Mr. Thomas's hands behind his back and placed cuffs on his ankles.

48.     Mr. Thomas asked "Where is the wheelchair?"

49.     Defendant Police Sergeant Rice directed Defendant Police Officers Does No. 1 through 3 into the holding cell where Defendant Police Officer Doe 1 ordered Mr. Thomas to sit down.

50.     32.     When Mr. Thomas sat down, Defendant Police Officer Does No. 1 through 3 grabbed him by his legs and pulled them up, causing him to fall backwards off of a bench, and hit his head.

51.     Defendant Police Officer Does No. 1 through 3 then dragged him out of the holding cell, and over one hundred feet on a rough concrete surface and into a reception area.

52.     In the process, Mr. Thomas received severe bruises and lacerations, as well as enduring painful blows to his cranium, neck, back, and legs, and his watch was broken from his wrist as a result of the dragging.

53.     As they dragged him, these Defendants deliberately and maliciously dragged him into the path of a heavy metal refuse container, and deliberately and maliciously slammed his head into the container and the nearby wall, causing Mr. Thomas great shock and alarm, pain and suffering, and bruising.

54.     Mr. Thomas was taken to Woodhull Hospital where the Doctor who examined Mr. Thomas determined that no psychiatric evaluation was necessary.

55.     No psychiatric evaluation was attempted or completed.

56.     This battery was done in the presence of Defendants Police Sergeant Rice, Police Officer Krystal Diaz-Olivier, and the three EMTs.

57.     Mr. Thomas was returned to Borough Court Section – KCB at approximately 3:10 p.m. on October 10 by Defendant Police Officer Krystal Diaz-Olivier.

58.     Mr. Thomas was then transferred into the custody of Defendant Police Officer Zhu.

59.     Shortly after arriving at Borough Court Section – KCB, Mr. Thomas again refused to provide fingerprints.

60.     As a result of that refusal, Defendant Police Officer Victoria entered the cell where Mr. Thomas was being held, and ordered him to turn around to be handcuffed.

61.     Mr. Thomas complied and his hands were cuffed behind his back by Defendant Police Officer Victoria.

62.     Mr. Thomas was held in the holding cell with his hands cuffed behind his back for approximately six hours.

63.     During this six hour period, Mr. Thomas made repeated requests to use the toilet, which was located in the cell, and that his hands be released from the handcuffs for that purpose, as he was unable to use the toilet because of the position of his hands.

64.     Defendant Victoria refused to release him from the handcuffs to allow him access to the  toilet.

65.     Mr. Thomas pleaded with Defendant Police Officer Victoria, and Defendant Police Officer Zhu to allow him to use the toilet.

66.     Defendant Police Officer Victoria and Defendant Police Officer Zhu ignored Mr. Thomas's pleas deliberately and maliciously in order to cause him physical pain and suffering, and emotional humiliation and distress, in retaliation for his insistence on his rights regarding fingerprinting and picture-taking, and because of his history of documenting police abuses, with the purpose of dissuading him from continuing to document police misconduct.

67.     As a result of Defendant Police Officer Victoria's actions, Mr. Thomas was forced to urinate on himself and to remain soaked in his own urine for hours.

8

68.     Mr. Thomas also made requests for water and food, which Defendant Police Officer Victoria and Defendant Police Officer Zhu heard clearly, but ignored deliberately and maliciously to cause him physical pain and suffering and emotional humiliation and distress.

69.     Defendant Police Officer Zhu was present and observed the course of events stated above, and allowed Defendant Police Officer Victoria to perform these actions and omissions of duty against Mr. Thomas, remaining silent throughout his approximately six hour ordeal.

70.     The handcuffing in a painful position for 6 hours, and denial of toilet use, water and food, was in retaliation for Mr. Thomas's refusal to agree to be fingerprinted or photographed, and because of Mr. Thomas's history of documenting police misconduct, and because he was known to the officers to have made complaints against other police officers.

71.     Mr. Thomas was greatly upset and distressed by his inhumane treatment, and wished to document this abuse in some way.

72.     A sympathetic officer persuaded Mr. Thomas to allow himself to be fingerprinted so there would be a record of his presence there.

73.     Plaintiff was then released from custody on his own recognizance on October 11th, 2015.

74.     Plaintiff was held for over 48 hours from approximately 3:00pm on October 9, 2015 through approximately 4:00pm on October 11, 2015.

75.     Defendants extended Plaintiff's time in custody maliciously with the purpose of keeping Plaintiff in the system longer than he would otherwise have been, in retaliation for

Plaintiff's history of documenting police misconduct, and to dissuade Plaintiff from documenting police misconduct in the future.

### FIRST CAUSE OF ACTION
### FALSE ARREST, ILLEGAL SEARCH AND SEIZURE
### 42 U.S.C. § 1983

76.    Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

77.    The Individual Defendants acted under color of state law.

78.    The Individual Defendants conduct deprived Plaintiff of the right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

79.    The Individual Defendants falsely arrested Plaintiff and failed to intervene in each other's clearly unlawful actions.

80.    Plaintiff has been damaged as a result of the Individual Defendants' wrongful acts and demands compensatory and punitive damages.

### SECOND CAUSE OF ACTION
### ASSAULT, BATTERY AND EXCESSIVE FORCE
### 42 U.S.C. § 1983

81.    Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

82.    Acting under color of state law, the Individual Defendants assaulted and battered Plaintiff with no justification or excuse therefor.

83.    Acting under color of state law, the Individual Defendants aided and abetted in the assault and battery of Plaintiff with no justification or excuse therefor.

84.    Acting under color of state law, the Inidividual Defendants used force in excess of that justified by law.

10

85.     As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

### THIRD CAUSE OF ACTION
### MALICIOUS PROSECUTION
### 42 U.S.C. § 1983

86.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

87.     Acting under color of state law, the Individual Defendants brought charges against plaintiff without probable cause, at such time as they should have known there was no probable cause, and Plaintiff was subject to post-arraignment deprivation.

88.     As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive relief.

### FOURTH CAUSE OF ACTION
### MUNICIPAL AND SUPERVISORY LIABILITY
### 42 U.S.C. § 1983

89.     The above paragraphs are incorporated herein by reference.

90.     The City is liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, and servants, in that they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, as detailed above.

91.     The violations of Plaintiff's constitutional rights and of Federal Law as herein above enumerated against the Individual Defendants, and each of them, were carried out under the following policies, customs, and practices of Defendant City of New York.

A.  A policy, custom and practice to use excessive force in detaining suspects for arrest;

B.  A policy, custom and practice to harass, detain and/or arrest persons despite lack

of probable cause, based instead on failure to provide identification, although those persons are under no legal obligation to provide such identification;

C. A policy, custom and practice to harass, detain and/or arrest persons despite lack of probable cause, based instead on the perception of police officers that a person is asserting their right to be free from police misconduct or has asserted such rights in the past;

D. A policy, custom and practice to harass, detain and/or arrest persons who engaged in publicizing information derogatory to the New York City Police Department and/or to individual New York City Police Officers, in the absence of criminal violations;

E. A policy, custom and practice to harass, use excessive force against and/or send for improper psychiatric evaluation without proper medical need and/or for improper purposes, including the purpose of increasing detention time of persons who refuse to be fingerprinted and/or sit for photographs at a police station;

F. A failure to train officers to comply with the requirements of the law as set forth above, exhibiting deliberate indifference to the rights of persons with whom police officers come in contact, as shown by the Municipal Defendant's awareness of data demonstrating that said policies, customs and practices resulted in routine violations of law and civil rights.

92. The City and its employees, agents and servants have been reckless, grossly negligent and/or negligent in training and managing subordinates who caused the unlawful events suffered by Plaintiff, as detailed above.

93. The City has been alerted to the regular use of excessive force during arrests and imprisonment, false arrests and malicious prosecution by its police officers, and

improper medical supervision, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests.

94.   The City has failed to train its police officers properly with regard to proper use of force during arrests and during imprisonment.

95.   The City has been alerted to the regular use of improper medical decision-making by its police officers with regard to those in its custody, but has nevertheless exhibited deliberate indifference to such improper medical decision-making by its police officers.

96.   The City has failed to train its police officers properly with regard to proper medical decision-making, including psychiatric evaluations, with regard to those in its custody.

97.   The deliberate indifference of the City, and its employees, agents and servants, caused the violation of Plaintiff's constitutional rights in this case.

98.   The aforesaid events were not isolated incidents.

99.   The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, judicial rulings and publically available surveys and studies, of the suppression of evidence and finding officers not credible as a matter of law, that a disturbing number of their police officers use excessive forceduring arrest and imprisonment, unlawfully search and seize the people of New York, bring charges against the people of New York with no legal basis, perjure themselves in charging instruments and testimony, fail to intervene in and report the obviously illegal actions of their fellow officers, and engage in improper medical decision-making with regard to those in its custody.

100.  The City and its employees, agents and servants, know to a moral certainty that the employees of the Police Department confront the situations referenced above on a frequent basis.

101.  Nevertheless, the City has allowed policies, practices and customs that allow the aforementioned to persist.

102.    For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected.

103.    The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them.

104.    In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct;

105.    As a result, officers have no real incentive to come forward, or to testify truthfully at the CCRB.

106.    The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

107.    The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.

108.    The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.

109.    Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

110.    Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct.

111.    Without this notification, improper search and seizure practices, use of excessive force during arrest and imprisonment, use of improper medical decision-making and use of non-credible testimony go uncorrected.

14

112.   Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.

113.   In 1999, the New York City Comptroller reported that there was a "a total disconnect" between the settlements of substantial civil claims and police department action against officers.

114.   The City is aware that all of the aforementioned has resulted in violations of constitutional rights.

115.   Despite such notice, the City has failed to take corrective action and/or to provide proper training to its officers.

116.   The City has acted with deliberate indifference with regard to the above actions and omissions.

117.   This failure to act, failure to train, deliberate indifference, and these policies, practices and customs caused the officers in the present case to violate Plaintiff's civil rights, without fear of reprisal.

118.   Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants, including Plaintiff.

119.   Under 42 U.S.C. § 1983, Defendant City of New York is jointly and severally liable with Defendants Police Officers and each of them for the general and specific damages Plaintiff sustained, as well as for the attorneys' fees and the costs and disbursements of the action.


WHEREFORE, Plaintiff demands as follows:

    A. Compensatory damages;

    B. Punitive damages;

15

C. Cost of suit and attorney's fees under 42 U.S.C. § 1988;

D. Such other relief as may be just and proper.

Dated: New York, New York
      October 2, 2018

/s/ Jillian T. Weiss
JILLIAN T. WEISS (TW4542)
Attorney for Plaintiff
527 Hudson Street
P.O. Box 20169
New York, NY 10014

16